128 P.2d 1047

**CARLSBAD IRR. DIST. v. FORD et al.**
**SAME v. COBBLE.**

No. 4668.

Supreme Court of New Mexico.
Sept. 2, 1942.

Frazier & Quantius, of Roswell, for appellants.

Stagner &·Anderson and Caswell S. Neal, all of Carlsbad, for appellee.

BICKLEY, Justice.

This appeal involves two cases filed in the district court of Eddy County, New Mexico, which were consolidated for trial and are consolidated here.

The plaintiff (appellee) is a quasi municipal corporation. The issues in the two cases are substantially the same. The complaints allege in substance that appellant was organized by the water users under the Carlsbad Irrigation Project on the Pecos River to provide for the irrigation of their lands in the Carlsbad Project, in cooperation with the United States under the Federal Reclamation laws for the general purpose of constructing irrigation works, drainage works, maintenance of water and the irrigability of lands and for all other purposes commonly conferred upon irriga-

tion districts under our laws. It alleges that the water users on the Carlsbad Project are the beneficial owners of valuable water rights in the water in the Pecos River. That these rights include the right to store large quantities of water in Avalon, McMillan and Alamogordo Dams on the Pecos River and to divert water from said river with which to irrigate the lands upon said project.

It alleges that the defendants are unlawfully and without right, diverting water from the Pecos River above McMillan Dam by means of pumps and pumping plants located on the river above the point of diversion of the Carlsbad Project, and are applying the water so diverted to irrigate lands owned by the respective defendants. It alleges that defendants have no water rights of any character on the Pecos River and that their unlawful use and diversion of said water prevents the same from entering the reservoirs, canals, diversion works and ditches of the Carlsbad Project and prevents the storage and application of said water by plaintiff, constituting the water users on the Carlsbad Project for beneficial use on lands in said Project.

It alleges that the wrongful and unlawful diversion of the water of the Pecos River by each of the separate and distinct acts of the defendants, and the use of said water without right, operates as a whole to diminish and deplete the natural flow of the Pecos River into the reservoirs and irrigation works of the Carlsbad Project, and operates to diminish the supply of water

available to the Carlsbad Project water users, and for supplying the storage reservoirs and filling and refilling the same from time to time, as often as waters are available therefor. It alleges that plaintiff has storage capacity for the purpose of impounding the perennial flow of all the waters of the Pecos River which is being unlawfully diverted by defendants, and that by reason of the prior appropriations of said water, and the application to beneficial use, plaintiff is entitled to enjoin the defendants from unlawfully appropriating the water in the unlawful manner alleged.

The complaint contains other allegations appropriate to invoke the equitable powers of the court to grant injunctive relief.

The answers of the defendants denied in general the allegations of the complaint, admitting however, the diversion and use of water from the river. They assert that valuable improvements have been made upon the farms of the defendants and that without the use of waters the defendants would be poverty stricken and without resources, and that plaintiff Irrigation District, knowing this, permitted defendants to proceed to improve their farms and that to grant the injunctive relief prayed for would result in irreparable injury to defendants. It is asserted that to join the defendants in a single suit is unjust and improper, and that if plaintiff is damaged, it has an adequate, plain and speedy remedy at law. By way of new matter, defendants allege that plaintiff abandoned the water and all of its rights thereto by al-

lowing it to go to waste and that the use of each defendant of water from the river is infinitesimal compared to plaintiff's requirements, and in no manner damages plaintiff or depletes its water supply. It is further alleged that the water used by defendants is unappropriated water. That plaintiff has permitted waste ·of the river water by allowing the river channel to become impeded and seep away, and that the water used by the defendants would never have reached the Carlsbad Project for use for irrigation. It is alleged that the necessity for water of defendants is paramount to the right of plaintiff. That the defendants are seeking to obtain from the State Engineer a right to remove water from the Pecos River. That the venue of the action is in Chaves County. That the court has no jurisdiction of the action; that the water taken by defendants, results in no diminution of the volume of water in the Pecos River available to plaintiff, and that if plaintiff has suffered damage, it has a remedy at law. That defendant is a riparian owner and that the loss of water to the plaintiff in no wise injures plaintiff, but greatly benefits defendants by enabling them to make a living.

A reply to each of the answers denying in substance the allegations of defendants, joined the issues for trial.

The court, after hearing the cause, made elaborate findings of fact and rendered its decision and judgment in favor of the plaintiff and granted the injunctive relief prayed for.

The findings of fact are quite lengthy and we see no good purpose to be served by quoting them extensively. It is enough to say that they amply support the decree and that they are sustained by substantial evidence. Portions of these findings will be referred to in the progress of the opinion.

Errors assigned by appellants are eight in number, and are argued in the briefs under designation as points.

The first is that plaintiff is not a proper party to maintain this suit.

The pleadings, findings and decision of the trial court disclose such a relationship between the plaintiff and the Government of the United States, which had an interest in the right to use the waters involved, and the land owners who are the beneficial users of the water, and for whose benefit plaintiff was organized and maintains its existence and service, and to whom it owed a duty of impounding, preserving and distributing the water involved, that we conclude as did the district court that the plaintiff was a proper party to maintain this action.

We also conclude from the facts found by the trial court that the case was one which warranted the trial court in granting injunctive relief to the plaintiff and against defendants. Under any view, the right to the use or control of the waters involved is either in the plaintiff, which right is in process of administration by it, representing the land owners beneficially using the water, or they are unappropriated

340

waters of the State of New Mexico. The defendants have shown no right in themselves under our Irrigation Code or otherwise.

Kinney in his Work on Irrigation and Water Rights, 2d Ed., in considering the definitions of the term "Appropriation of Water" at section 707, says:

"In every State of this Western Country, there is either what is known as an 'Irrigation Code' or a water code of some sort, or a line of court decisions of that particular jurisdiction, declaring just how and by what methods an appropriation of water may be made, and what it takes to constitute a valid appropriation. In the definition of the term this element should not be ignored.

"Therefore, we believe that the following definition of the term 'appropriation of water' under the Arid Region Doctrine of Appropriation comes nearer being correct than any which we have found: The appropriation of water consists of the taking or diversion of it from some natural stream or other source of water supply, *in accordance with law,* with the intent to apply it to some beneficial use or purpose, and consummated, within a reasonable time, by the actual application of all of the water to the use designed, or to some other useful purpose." (Emphasis supplied.)

In Harkey v. Smith, 31 N.M. 521, 247 P. 550, 551, after stating the principles governing the appropriation of water under the Arid Region Doctrine, when "uncontrolled by statute" we went on to say:

"We have, however, a statute in this state regulating the acquisition, means, and manner of enjoyment of water rights which controls the whole matter, and which marks a wide departure from the doctrine above stated."

In addition to section 151-104, Code 1929, hereafter quoted, which gives the State Engineer general supervision of the waters of the State and of the appropriation thereof, attention is called to section 151-160, Code 1929, which declares the unauthorized use of water to which another person is entitled or to begin to carry on any construction of works for storing or carrying water until after the issuance of a permit to appropriate such waters to be a misdemeanor, except in the case of construction carried on under authority of the United States.

The stipulated facts show: "That none of the defendants have been authorized by the State Engineer of the State of New Mexico or any lawful authority to maintain said pumping plants or to irrigate lands from the Pecos River."

Appellants say that they introduced evidence which shows that all of the defendants are applying or have applied, to the State Engineer for permits to maintain pumping plants or to divert water from the Pecos River. This may support their claim that they have not proceeded in a wilful or reckless disregard of law, but since the permits have not issued, their application for same alone establishes no rights in them.

■ The defendants urge that the courts should have balanced the equities and conveniences and found in their favor. Since defendants have not established any right in themselves to the use of the water, we cannot say that the trial court would have been warranted in reaching a different conclusion merely because the result visits severe consequences upon the defendants and the benefit to the plaintiff and those it represents may be slight in comparison.

■ Appellants' contention that there is a misjoinder of parties defendant is without merit.

■ Courts of equity will interpose to prevent a multiplicity of suits where the subject matter of contest is held by one party in opposition to a number of persons who controvert his right and who hold separate and distinct interests depending on a common source. See 28 Am.Jur. Injunctions, § 58.

■ Where the acts sought to be enjoined are tortious, it is proper to join as defendants in an injunction suit, all tort feasors, even though there is no concert or unity of design between them. 32 C.J. Injunctions, § 484, and notes; Kinney on Irrigation and Water Rights, 2d Ed., § 1632 and cases cited.

It is next contended by appellants that the venue of this cause was in Chaves County and not in Eddy County, where the action was commenced.

The Carlsbad Irrigation Project operated by the plaintiff, was situated in Eddy County except in particulars not affecting the issue, while the acts of defendants in pumping water from the Pecos River to their lands in Chaves County, took place there. This is not a suit to adjudicate water rights of a stream system. It is a proceeding for injunctive relief from the alleged wrongful and illegal diversion of waters to the detriment of the Carlsbad Irrigation Project. The right to use the waters involved is alleged by plaintiff to be appurtenant to the Carlsbad Irrigation Project situated in Eddy County.

Appellants rely upon the fourth paragraph of section 147-101, Code 1929, which declares that when lands or any interests in lands are the object of any suit in whole or in part, such suit shall be brought in the county where the land or any portion thereof is situate.

■ Assuming that water when beneficially used on land is an interest in land, the water involved in this case is not an inseparable attribute of the land of defendants situated in Chaves County merely because the Pecos River flows through or adjacent to their lands. Under the doctrine of prior appropriation of waters in force in this state, the plaintiff's right to the waters which they have appropriated are appurtenant to the Carlsbad Irrigation Project, which in the main is in Eddy County. Lakeside Irr. Co. v. Markham Irr. Co., 116 Tex. 65, 285 S.W. 593. It is decided in the last cited case that where a diversion of a stream is effected in one county, injuriously affects lands or water being bene-

ficially used to irrigate lands in another county, a court of the latter county, if it acquires jurisdiction of the person of the defendant, has authority to enjoin the diversion. See, also, Miller & Lux v. Rickey, C.C., 127 F. 573; Willey v. Decker, 11 Wyo. 496, 73 P. 210, 100 Am.St.Rep. 939; Last Chance Water Ditch Co. v. Emigrant Ditch Co., 129 Cal. 277, 61 P. 960; Sutter-Butte Canal Co. v. Great Western Power Co., 65 Cal.App. 597, 224 P. 768; Field v. Kincaid, 67 Colo. 20, 184 P. 832.

Appellants' fifth point is that this cause constitutes a matter within the jurisdiction of the State Engineer. Appellant quotes the following from section 151-104, Code 1929: "He shall have general supervision of the waters of the state and of the measurement, appropriation, distribution thereof, and such other duties as are required by this article."

The plaintiff and defendants have appealed to the State Engineer in aid of what they consider to be their rights. Neither obtained relief from that quarter.

We do not think the statutory provisions quoted, important as they are, were intended by the Legislature to oust the courts of jurisdiction to protect persons having the right to the use of waters. This point of appellant is not well taken.

It is urged that plaintiff has been negligent in the assertion of its rights and that its laches deprives it of the right to the relief it obtained. We do not concur in this conclusion.

In 67 C.J. Waters, paragraph 151, it is stated: "Ordinarily, however, unless by delay the legal rights of plaintiff are lost and defendant acquires by prescription a right to pollute the stream, his remedy of injunction is not lost by mere lapse of time."

In Anderson v. Town of Waynesville, 203 N.C. 37, 164 S.E. 583, 587, the court said: "As we understand, the courts generally enforce the rule that a plaintiff does not lose his remedy by mere laches, unless by delay his legal rights also are lost and the defendant acquires by prescription a right to commit the nuisance. The evidence tends to disprove acquiescence in the admitted trespass. The injury resulting from a nuisance or a trespass upon real property is continuous in its nature, and gives successive causes of action as successive injuries are perpetrated. Continuous injuries caused by the maintenance of a nuisance are barred only by the running of the statute against the recurrent trespasses; and mere inaction on the part of the plaintiff will not defeat his right, unless it has continued long enough to effect a change of title." (Citing cases.)

We think these principles are applicable to the situation in the case at bar.

The trial court found as follows: "(d) That there are a large number of pumping plants on the Pecos River above Lake McMillan which have permits from the State Engineer, and the plaintiff knew of some such pumps but it did not have knowledge that the pumps of these defendants, which

were being operated without decreed rights or permits from the State Engineer, were being operated on said river until advised by the State Engineer approximately eighteen months to two years ago, and thereupon plaintiff caused a survey of the pumps and the lands irrigated therefrom to be made, and requested the State Engineer to institute proceedings to stop such pumping, and diversion, which the State Engineer refused to do, and this action was thereupon instituted by the plaintiff herein."

The pleadings, findings and evidence do not disclose any prescriptive rights in defendants. To the contrary, they are now making application to the State Engineer for permits to appropriate the very waters involved, but there is no evidence that any permits have been awarded to the defendants.

■■■ Appellants claim that the court erred in refusing to find that the plaintiff was guilty of (a) Waste; (b) Non-user; and (c) Abandonment of the waters it claims.

Upon a careful consideration of the record, this point is ruled against the appellants. Furthermore, as we have earlier said, the present record shows that the plaintiff is entitled to use the waters involved, or they are public unappropriated waters, since the defendants have shown no valid rights to their use. They are just now applying to the State Engineer for permits to use these waters and no permits have issued.

■■■ As to the appeal of Morty Cobble in Cause #7258, we have examined the record and do not find that this appellant is in any more favorable situation than the other appellants.

The appellants complain: "The way the injunction reads, to-wit: 'be and he is hereby permanently enjoined and restrained from diverting the water from the Pecos River,' prevents any use even of flood waters rushing by in great quantities, such as in 1941, and going to waste in the Gulf of Mexico. Such could not possibly be a correct decision for an Arid Region where every drop of water available should be used beneficially."

We take it for granted that upon a proper showing of new and changed conditions, an application by defendants for a modification of the decree would be entertained by the district court. The concluding portion of the decree indicates this. The decree recites: "Nothing herein shall operate to prevent the defendants from applying to the State Engineer for water rights or prosecuting any application now pending and filed by any of said defendants."

Finding no error in the record, the decree is affirmed. It is so ordered.

BRICE, C. J., SADLER and MABRY, JJ., concur.

ZINN, J., did not participate.