## SAIN et al. v. MONTANA POWER CO.
### No. 7499.

Circuit Court of Appeals, Ninth Circuit.
June 8, 1936.

E. C. Mulroney, of Missoula, Mont., and S. P. Wilson, of Deer Lodge, Mont., for appellants.

W. L. Murphy and A. N. Whitlock, both of Missoula, Mont., and John E. Corette, Jr., of Butte, Mont., for appellee.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal by the plaintiffs from a final decree in equity dismissing a bill of complaint charging unlawful interference with plaintiffs' water rights, on the ground of failure of jurisdiction in the United States District Court. The dismissal by the court below was sua sponte, neither party presenting to it the question, the decision of which disposed of the controversy in that tribunal.

The complaint was brought by several citizens of the state of Montana against the defendant power company, a corporation of New Jersey. The adequate jurisdictional amount was alleged.

The following facts appear from the allegations of the complaint: Rattlesnake creek is a short fresh-water stream emptying into the Missoula river in Western Montana. All parties to the action are successors in interest to certain persons who, prior to 1903, acquired rights to divert the waters of Rattlesnake creek; such rights being acquired by appropriation for beneficial uses. Rev.Codes Mont.1921, § 7093.

The complaint states that in 1903, in an action arising between various appropriators and claimants to the waters of the creek (such action being cause 1953 in the state district court), a final decree was entered,

fixing the rights of the parties in the order of their priority. All parties in the present case are privy to some of the parties in cause 1953. The company's predecessor in interest was awarded, inter alia, appropriation rights 1, 2, and 9. Each of these was a right to appropriate a specified number of inches, to be diverted by means of two ditches tapping the creek below the points at which plaintiffs' predecessors in interest (whose appropriations were likewise adjudicated and confirmed by the decree in cause 1953) drew their water. The complaint alleges the decree in cause 1953, in addition to adjudicating the water rights, provided: " *. * * That the several parties to this action, and their successors in interest, and their agents, servants and employes, and all persons acting by, through or under them, be and they are hereby perpetually enjoined from in any manner interfering with the rights of each of the other parties as herein established."

The complaint further alleges that, subsequent to the decree in cause 1953, the company or its predecessors did interfere with these adjudicated rights of plaintiffs, and thus, in effect, alleges the violation of injunction by changing the diversion points of rights 1, 2, and 9 from the original ditches to a single point higher up the stream and above many of the diversion points of plaintiffs and their predecessors. Until 1931 there was sufficient flow in Rattlesnake creek to satisfy all the appropriation rights of the plaintiffs, in spite of the company's new diversion point; but during the years 1931, 1932, and 1933 the flow was not sufficient to satisfy plaintiffs' rights, though, it is alleged, if the diversion had not been made by the company, the flow down the channel would have been sufficient.

The complaint then prays that the defendant company's rights be adjudged inferior to those of the plaintiffs, that the change of the company's diversion point be adjudged injurious to plaintiffs, and that such change be enjoined.

The company, answering, alleged: (1) That the charged alteration in diversion points for rights 1, 2, and 9 was an accomplished fact when the decree in cause 1953 was entered, and that the decree was entered with the understanding that the water would be appropriated from the new point; (2) that no damage had resulted to plaintiffs from such change in diversion point; (3) that the company had acquired a right to divert the water at the upper diversion point by open, adverse, and notorious user for a period of more than 20 years; (4) that the plaintiffs were estopped by laches; and (5) that the statute of limitations barred this action.

It appeared in evidence, and the trial court found, that the decree in cause 1953 in the state court had enjoined the defendant from interfering with the plaintiffs' rights and held that in the instant case the plaintiffs were seeking injunction against actions by the company already enjoined in the state court action. The trial court also found that, pursuant to the decree of the state court in cause 1953, a water commissioner had been appointed by the court rendering the decree, for the purpose of apportioning the waters of the stream in accord with the decree. Rev.Codes Mont.1921, § 7136, as amended by Laws 1925, c. 125, § 1. The evidence shows that such a commissioner had been appointed each year for the greater part of the years since the decree was entered, and that a commissioner was in authority during each of the years 1931, 1932, and 1933.

The lower court held that, because the alleged violation of plaintiffs' rights violated the injunction of the state court, and also because of that court's continuing control, through its water commissioner, the federal court should not assume jurisdiction in the field so occupied by the state tribunal. To test the correctness of this holding, we will briefly review the pertinent statutes of Montana with reference to the principle guiding the relationship between state and federal courts in the exercise of their concurrent jurisdiction.

By Rev.Codes Mont.1921, § 7105, any or all parties claiming interests in the waters of a stream may be made parties to an action in which the relative rights and priorities of all litigants may be adjudicated and settled. Such an action, while in personam, is in effect one to quiet title to real property. Whitcomb v. Murphy, 94 Mont. 562, 565, 567, 23 P.(2d) 980.

Rev.Codes Mont.1921, § 7136, as amended by Laws 1925, c. 125, § 1, provides: "Whenever the rights of persons to use the waters of any stream * * * have been determined by a decree or decrees of a court of competent jurisdiction, it shall be the duty of the judge of the district court having jurisdiction of the subject matter, upon the application of the owners of at least ten per cent of the water rights affected by the decree or decrees, in the exercise of his

discretion, to appoint one or more commissioners, who shall have authority to admeasure and distribute to the parties bound by the decree or decrees the waters to which they are entitled, according to their rights as fixed by such decree or decrees."

■ Section 7150, as amended by Laws 1925, c. 125, § 5, provides that any owner or user of the waters of an adjudicated stream "who is dissatisfied with the method of distribution," and "who claims to be entitled to more water than he is receiving," or "is entitled to a right prior to that allowed him by such commissioner," may file a written complaint in the appropriate court setting forth his claim. Notice is to be given to interested parties in such manner as the judge deems necessary. After a hearing, the judge is to make "such findings and order as he may deem just and proper in the premises" and give directions to the water commissioner accordingly. The procedure thus set out in section 7150 is not a formal trial. It is more in the nature of proceedings ancillary to the decree which originally adjudicated rights on the stream. Gans & Klein Inv. Co. v. Sanford, 91 Mont. 512, 520, 8 P. (2d) 808.

We do not consider it a bar to the jurisdiction of the federal court in this case that the plaintiffs might obtain the relief demanded by citing the defendant for violation of the permanent injunction issued in cause 1953, or that, pursuant to that decree, a water commissioner has been appointed to administer rights under it for most of the years since the decree was rendered.

■ The fact that a permanent injunction was rendered is said to indicate that cause 1953 is still pending in the Montana state court, and that therefore the federal court should leave the parties to obtain adjudication and relief in such pending cause. To the contrary, it has been held by the Supreme Court of Montana that a proceeding in contempt for violation of an injunction is distinct from the cause of action in which the injunction was rendered. State ex rel. Boston & Montana Consolidated Copper & Silver Mining Co. v. Clancy, 30 Mont. 193, 195, 76 P. 10.

The Montana cases recognize that, in disputes over water rights between parties whose rights on the stream in question have been previously adjudicated and settled by permanent injunction, it is competent for injured parties to bring actions distinct from the cause in which the injunction was issued. Mannix & Wilson v. Thrasher, 95 Mont.

267, 26 P.(2d) 373; Thrasher v. Mannix & Wilson, 95 Mont. 273, 26 P.(2d) 370. Where a particular remedy afforded in a state proceeding is not held by the state court to exclude an independent action seeking a remedy for the same wrong, the federal courts may entertain such an independent action, provided requisites of federal jurisdiction are present. Ellis v. Davis, 109 U. S. 485, 496, 3 S.Ct. 327, 27 L.Ed. 1005; Sutton v. English, 246 U.S. 199, 205, 38 S.Ct. 254, 62 L.Ed. 664.

■■ The appointment of a water commissioner for a number of years, including the seasons of 1931, 1932, and 1933, by the court rendering the decree in cause 1953, is no bar to the present suit. Defendant argues that it is such a bar because the state court through an appointed ministerial officer is exercising jurisdiction over the res in controversy, and that a federal court suit would interfere with the state court's control of the res. Buck v. Colbath, 3 Wall. 334, 341, 18 L.Ed. 257; Watson v. Jones, 13 Wall. 679, 719, 20 L.Ed. 666; Covell v. Heyman, 111 U.S. 176, 182, 4 S.Ct. 355, 28 L.Ed. 390.

The principle enunciated by these cases is not applicable here. That principle is that in the realm of concurrent jurisdiction a court of one sovereign will not presume to exert jurisdiction over a res which is in the control of a court of the other. In the instant case, the plaintiffs do not ask that the federal court in any manner take the res under its control. They ask an in personam adjudication of water rights. It has been recently stated by the Supreme Court that the test of the maintenance of a suit in the federal court, when the subject of such suit is in litigation in a state court, is whether control of the res is essential to maintenance of the federal action. United States v. Bank of New York & Trust Co., 296 U.S. 463, 477, 56 S.Ct. 343, 80 L.Ed. 331.

The federal court in this case is not being asked to assert jurisdiction in rem over the waters of Rattlesnake creek. The in personam adjudication asked, with an injunction if granted, will not interfere with the duties of the water commissioner in his administration of the res. He is not a party to the action. Assuming the plaintiffs prevail and obtain an injunction requiring defendant to cease taking water at the upper diversion point, that mandate will run against the defendant alone, not the water commissioner. There is nothing in the statutes of Montana requiring a water user to take all the water a commissioner might allow him.

Furthermore, the law of Montana does not contemplate that the adjustment of water rights by the appointment of a commissioner, and by the procedure outlined in Rev. Codes 1921, § 7150, as amended, shall be exclusive of independent actions seeking similar adjustment. Tucker v. Missoula Light & Ry. Co., 77 Mont. 91, 98, 250 P. 11. Injunctive relief by separate action against water users, or even against the commissioner himself, may be sought in the Montana courts. Mannix & Wilson v. Thrasher, supra; Thrasher v. Mannix & Wilson, supra. Here again the principle applies that, where a state supplies a particular form of adjudication and enforcement of a certain class of rights, but does not make the particular form of action exclusive, the federal court, its jurisdiction being properly established, will not hesitate to entertain an independent action. Ellis v. Davis, supra; Sutton v. English, supra.

We conclude, therefore, that the District Court had jurisdiction to proceed with the cause. The decree is reversed, and the District Court instructed to proceed with the cause.

Reversed.